ORIGINAL

EASTERN DISTRICT COURT OF THE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------------------X

DR. SIMPSON GRAY,



                                    PLAINTIFF,

                  -AGAINST-

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF EDUCATION "DOE", MICHAEL
BLOOMBERG, MAYOR OF THE CITY OF NEW YORK,
JOEL KLEIN, CHANCELLOR OF THE NEW YORK CITY
PUBLIC SCHOOLS, THE DEPARTMENT OF EDUCATION
"DOE", DENISE HALLET, THERESA EUROPE, GERARD
DONEGGAN, ROBERT WILSON, JOHN MULLIGAN, PETER
HANEY, LOUISE KANION, ADEREMI BELLO,  DR. EDNA
VEGA,  HELENE  CRAWFORD,  MARY  PADILLA,
MYRTERLENA RIVERA, LAWRENCE BECKER,
DR. CAROLYN CORBETT, LORRAINE MASTEN, SURITA
RYAN, STACY REEVES, MARIAM MAHMOOD-QURESHI
AND ROSETTA BROWNLEE in their capacities as current or
former employees of the DOE, CLAUDE HIRSH, Esq.
individually, LYNN AMELEH, Esq., individually,

                  DEFENDANTS.

3039

**COMPLAINT
and DEMAND
FOR JURY
TRIAL
INDEX No.:**

TOWNES, J.

POLLAK. M.J

--------------------------------------------------------------------------X



R E C E I V E D
JUL 0 1 2010
PRO SE OFFICE

/.

Plaintiff, DR. SIMPSON GRAY, pro se, as and for his complaint, alleges and says:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which the plaintiff Dr. Simpson Gray seeks relief for injuries received as a result of being subjected to a punitive, discriminatory environment which consisted of numerous supervisory and non supervisory staff and personnel and other individuals who engaged in numerous discriminatory acts against plaintiff, by:  a) denying and/or removing  plaintiff from specific job assignments and responsibilities for which he was and remains duly licensed and authorized to perform; and b) removed plaintiff from job assignments for which he was duly qualified and licensed to perform, and other discriminatory treatment based on age, race and gender in violation of his rights,  privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

## JURISDICTION

2.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

3.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

4.       Venue is proper in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. 1391 (a), (b) and (c).

## PARTIES

5.       Plaintiff, Dr. Simpson Gray is an African American male citizen.

6.       Defendant, City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to operate and maintain an education system, the Department of Education, for the education of children, the employees of which act as its agents and for whom it is ultimately responsible. In addition, the City of New York assumes the risk incidental to the operation of the education system, including acts of its employees therein.

7.       Defendant, Michael Bloomberg, is the Mayor of the City of New York, and in that capacity is the head of the Department of Education ("DOE") which is a City Department within the City of New York's governmental structure. At all times relevant hereto Defendant, Michael Bloomberg, served as Chief Department Head of the Department of Education.

8.       Defendant, Joel Klein, is the Chancellor of the New York City's Department of Education, a/k/a Schools Chancellor. At all times relevant hereto Defendant, Joel Klein, is and has served, as Schools Chancellor for the City of New York.

9.      Defendant, Denise Hallet, is or was, an employee of the Department of Education of the City of New York. At all times relevant herein, Defendant, Denise Hallet served as an employee of the Department of Education, and was employed by the DOE at the time of the incidents complained of herein, and was the person who notified the plaintiff that he was not eligible for a transfer to a new position.

10.      Defendant, Theresa Europe, Esq. is or was, an employee of the Department of Education of the City of New York, DOE. At all times relevant herein, Defendant Theresa Europe served as an attorney and counselor at law for the Department of Education and was employed by the DOE at the time of the incidents complained of herein, and was the person who negotiated and signed the Post Charge Stipulation of Settlement ("PCSS") on March 16, 2003, an agreement reached as part of the settlement of Section 3020a charges brought against plaintiff by defendant DOE in or about January of 1998, pursuant to the Education Law of the State of New York.

11.      Defendant, Gerard Donegan, is or was, an employee of the Department of Education of the City of New York, DOE. At all times relevant herein, Defendant, Gerard Donegan served as DOE, Committee on Special Education, "CSE" Region 9's Chairperson, and was plaintiff's immediate supervisor for years 2008 and 2009, and was the supervisor who refused to assign plaintiff a position for which he could be rated, refused to provide plaintiff a DOE Annual Rating, a document necessary to be considered for promotion and/or job transfer. It was Mr. Donegan who ordered plaintiff to sit in an area away from all other employees at Region 9, and refused to allow plaintiff to serve on

the CSE Review Teams even though plaintiff was fully licensed and New York State Certified and licensed in Special Education.

12.     Defendant, Robert Wilson, is or was an employee of the Department of Education of the City of New York, DOE. At all times relevant herein, Defendant, Robert Wilson, served as the Executive Director of the Integrated Services Center ("ISC") at Region 9 and was one of the supervisors of Plaintiff, and was responsible for allowing Defendants Gerard Donegan and John Mulligan, Deputy Director of the CSE to initiate and continue in on the job conduct which denied plaintiff any opportunity to engage in meaningful and measurable employment that was enjoyed by other employees with the same levels of education and licensure.

13.     Defendant, John Mulligan, is or was, an employee of the Department of Education of the City of New York, DOE. At all times relevant herein, Defendant, John Mulligan, served as Deputy Director of the Committee on Special Education, and cooperated with, or directed Defendant Gerard Donegan's acts and actions against the plaintiff, including but not limited to assigning plaintiff to an area at the CSE where debris, broken office equipment, i.e. fax machines, copiers and printers are kept, a spot dubbed by plaintiff as the "Dunce Corner", because of its isolation from other staff.

14.     Defendant, Peter Haney, is or was, an employee of the DOE, and at all times complained of and relevant herein, served as either Executive Director of the CSE Region 9, and was directly responsible for, and permitted the wrongful acts complained of herein against plaintiff, by defendants Carolyn Corbett, CSE 9 Chairperson, Louise Kanion, Deputy Executive Director, Gerard Donegan, CSE 9 Chairperson, and John

Mulligan, Deputy Executive Director against plaintiff, including, but not limited to refusing to provide plaintiff with a job assignment based on his recognized New York State Certification as General Education and Special Education teacher, and allowed plaintiff to be relegated to the status of a non entity in his own eyes and in the eyes of his co-workers.

15.     Defendant, Louise Kanion, is or was an employee of the DOE, and at all times complained of and relevant herein, served as either Executive Director or Deputy Executive Director of CSE 9 and was responsible for, and permitted the wrongful acts against plaintiff complained herein, and knowingly did nothing to halt the wrongful conduct complained of herein by her subordinates against plaintiff.

16.     Defendant, Aderemi Bello, is or was an employee of the DOE, and at all times complained of and relevant herein, served in the Administrative offices of the Human Resources of the DOE responsible for the issuance of Certificates of Eligibility "COE" to work in an administrative/supervisory capacity for the DOE, who, in or about 2009, at the direction of Lawrence Becker, also an employee of DOE, refused to issue

6.

plaintiff a Certificate of Eligibility as an Education Administrator, a credential required to apply for and being awarded an administrative position at the DOE.

17.     Defendant, Edna Vega, is or was an employee of the DOE, and at all times complained of and relevant herein, was employed as the Community School District 7 Superintendent, and in other capacities, and was employed by the defendant in 1997, 1998 thru 2005, and who, along with defendant Helene Crawford, Principal at Public School 5, was directly responsible for wrongfully removing plaintiff from his classroom teaching position at Public School 5, a position for which plaintiff was never allowed to return, even after being exonerated of the false charges made by Defendant, Helene Crawford, and others not employed by Defendant DOE.

18.     Defendant, Helene Crawford, is or was, an employee of the DOE, as principal of Public School 5, and at all times complained of, and relevant herein, was employed by the defendant in 1997 through on or about 2002, and was directly responsible for removing plaintiff from his classroom teaching position in both the Spring and Fall of 1998, and responsible for plaintiff not being a classroom teacher from 1998 until the present.

19.     Defendant, Myrterlena Rivera, is or was, an employee of the DOE as Superintendent of Community School District 7, and at all times complained of, and relevant herein, was employed by the defendant DOE in 1997, and was directly involved in and responsible for removing plaintiff from his classroom teaching position in both the

Spring and Fall of 1998, and is responsible for plaintiff not being a classroom teacher from 1998 to the present.

20.     Defendant, Lawrence Becker, is or was, an employee of the DOE, and at all times complained of, and relevant herein, was employed by defendant DOE in 1997, and was directly involved in, and responsible for not changing, or permitting the reversal of the Unsatisfactory "U" ratings assigned to plaintiff for the period 1998-2002, even after learning of the Post Charge Stipulation of Settlement "PCSS" agreed to in March of 2003, and was directly responsible for denying plaintiff a transfer from Public School 5, precluding plaintiff from returning to P.S. 5 in August of 2003, as well as directing plaintiff's reassignment to a "Rubber Room" type assignment at the DOE Region 9.

21.     Defendant, Dr. Carolyn Corbett, is or was, an employee of the DOE, and at all times complained of, and relevant herein, was employed by defendant DOE in 1997. Defendant Corbett served as CSE Chairperson in 2003; she became CSE Chairperson shortly after plaintiff transfer to that site by Defendant Lawrence Becker directly or on his orders by an employee of the DOE. She replaced Lorraine Masten and Surita Ryan as CSE Chair and Deputy Director of Region 9, respectively.

22.     Defendant, Mary Padilla, is or was, an employee of the DOE, and at all times complained of, and relevant herein, was employed by defendant DOE in 1997.

23.    Defendant Stacey Reeves is, or was, an employee of the DOE, and at all times complained of and relevant herein was employed by defendant DOE in 2009.

24.    Defendant, Mariam Mahmood-Qureshi, is or was, an employee of the DOE, and at all times complained of, and relevant herein, was employed by defendant DOE. Defendant Stacey Reeves is, or was, an employee of the DOE, and at all times complained of and relevant herein was employed by defendant DOE.

25. Defendant Rosetta Brownlee is or was an employee of the DOE, and from about August 2008 was plaintiff's immediate supervisor at Committee on Special Education, Region 1.

26. Defendant, Claude Hirsh is an attorney, and represented plaintiff in the 3020a proceeding brought against plaintiff by the Department of Education (DOE).

27. Defendant Lynn Ameleh is an attorney who presides over Impartial Hearings, for children with disabilities at the DOE's Impartial Hearing Unit.

**B. FACTUAL ALLEGATIONS**

25.    In or about May of 1998 defendant Department of Education, by and through its employees, herein defendants Helen Crawford, Principal of Public School 5 and Dr. Edna Vega, the District 7 Superintendent, directed that plaintiff be removed from his classroom teaching position for allegedly engaging in wrongful conduct.

26.     Plaintiff brought suit against the defendants in the Bronx Supreme Court, and was subsequently allowed to return to his classroom teaching position shortly before the June 30 end of the school year.  Upon information and belief that suit was subsequently dropped when no formal charges were filed against plaintiff.

27.     Shortly after the start of the new school year, in or about December of 1998, without explanation, plaintiff was again removed from his classroom teaching position and again ordered to report to the District 7 office where he sat in the lobby of that office for the remainder of 1998, before being ordered to report to the District 7 Special Education Office.

28.     In or about January 1999, plaintiff was served by defendant DOE with a complaint containing approximately fourteen (14) Specifications and Charges, and a notice of a pending Section 3020a Hearing, pursuant to the State of New York Education Law, to determine if he would remain as an employee of the DOE.

29.     At, or about the same time, plaintiff was assigned by defendant Claude Hirsh, Esq. to represent him in the 3020a proceeding which began in or about January 1999.

30.     The 3020a proceeding lasted from about January 1999 to March of 2003. during this time defendant DOE held only three Hearing dates, and produced only two witnesses against plaintiff, neither of the two witnesses had any direct knowledge of the several charges and complaints against Plaintiff.  In addition, neither witness' testimony was credible.  Finally, upon information and belief, in order to avoid a dismissal of its false claims defendant, DOE offered plaintiff a deal to settle the matter through a post

charge stipulation, which would include, inter alia, removal of the five (5) Unsatisfactory

Ratings that had been issued against plaintiff for not performing his classroom duties for

the five years he was suspended, plus dismissal of the fourteen specifications and charges

that had been filed against plaintiff in 1999. Plaintiff accepted the offer, because the

alternative would have meant spending the next several years of administrative hearings,

and while in the mean time having no specific job assignment, plaintiff would have been

forced to sit out that time at one of the DOE "Rubber Rooms".

31.   The Stipulation of Settlement was signed and agreed to on March 18, 2003.

On that same day, at the request of plaintiff, defendant Theresa Europe, Esq. drafted a

second document, which announced to all DOE agency and department heads that

plaintiff was again employable, because all charges against him had been dropped. Based

on that document and the PCSS plaintiff was assured that he could seek employment

anywhere in the DOE based on his qualifications, training and licensure eligibility. .

32.   Nearly one year later, the terms and conditions of the PCSS and the

addendum by defendant Theresa Europe had not been complied with, as evidenced by the

following humiliating experiences, inter alia:

> a) Between March 18, 2003 and end of June, 2003
>
>   plaintiff made more than fifty job applications in his
>
>   licensed area, resulting in fifty rejections, without one
>
>   invitation,

b) On, or about August 30, 2003, plaintiff was notified

by the DOE, by letter, over the signature of defendant

Denise Hallet, that his request for an approval of a transfer

to a new teaching assignment had been rescinded due to

his having five (5) Unsatisfactory Ratings (the same Ratings

that defendants DOE and Theresa Europe had agreed to, and

in fact had stated in the agreements of March 18, 2003 had

been changed t o Satisfactory Ratings, see Exhibit A,

c) When plaintiff attempted to return to Public School 5,

defendant Mary Padilla, who had knowledge of the PCSS

refused to allow plaintiff to enter Public School 5, and

ordered School Security to escort plaintiff to the outside of

the building, an act which caused plaintiff gross

embarrassment, humiliation as a crowd looked on

d) Defendant Robert Wilson, Region 1 Executive Director,

who in spite of his knowledge of the PCSS, ordered

plaintiff to return to Region 9, (where plaintiff sat and

suffered for the next five years doing nothing)!

33.    It was shortly there after that defendant Claude Hirsch, notified plaintiff in writing that he would no longer represent plaintiff, and would not make any effort to enforce the PCSS.

a) Defendant Claude Hirsh, Esq. advised Plaintiff as follows:

"if the Department does not assign you appropriate duties,

Notice of Claim should be served no later than April 7,

2004. At this time, I will not be taking any further action

on your behalf".

34.    This direction by defendant Claude Hirsch was incorrect legal advice in that no notice of claim is required in a Civil Rights law suit which defendant Hirsch had recommended if plaintiff decided to pursue his claims against defendants.

35.    As a result of defendant Hirsh's incorrect advice, plaintiff's action against defendants was dismissed based on a legal technicality, the result of which plaintiff was damaged.

36.    In August of 2003, plaintiff attempted to return to Public School 5 the day before school was to reopen. Yet, in spite of the PCSS, he was denied permission to enter the building by Defendant Mary Padilla, the building Principal, who directed plaintiff to return to the Region 9 for an alternative placement

37.    That same day plaintiff returned to Region 9, and was told that there was no alternative assignment for him. From that day in August 2003 until August 2008, a total of five years, plaintiff sat at Region 9 without any job assignment either in a

classroom or a credible work assignment at Region 9, even though each of the parties named herein were aware of the PCSS and the addendum signed by Theresa Europe, Esq. on March 18, 2003.

38.     From September 2003, plaintiff sat on the 8th floor just outside the room designated as the "Rubber Room". This was, and is today, the room where teachers who either have been removed from their classroom duties on disciplinary grounds or, because they were no longer wanted at their former school. During that time, and for the next five years, plaintiff made numerous requests for a meaningful assignment as a teacher or another position, but none was ever offered or assigned. In fact his request fell on the deaf ears of initially, Lorraine Masten and Surita Ryan. Lorraine Masten was replaced by Dr. Carolyn Corbett as Committee on Special Education Chairperson "CSE" who also reported to Peter Haney and Robert Wilson, Deputy Director and Director of Region 9.

39.     Later, Louise Kanion joined the management staff, and although aware of plaintiff's plight and his repeated request that the PCSS be enforced, Except for arranging for plaintiff to get a telephone and a computer, did nothing to implement or enforce the PCSS.

40.     From the time of her appointment as CSE Chair, sometime in 2004 until her departure in or about 2006, Dr. Carolyn Corbett refused to assign plaintiff any job assignment, and therefore plaintiff remained in a "no assignment" and received no job/performance rating even after making numerous requests for both.

41.     In or about 2006, defendant Dr. Carolyn Corbett was replaced by defendant Gerard Donegan as CSE Chair. Upon information and belief, defendant

14.

Donegan is the current CSE Chair and John Mulligan is the current Deputy Director of Region 9.

42.     Here again, plaintiff made numerous requests from about 2006 up to and including the time of his involuntary transfer, plaintiff made numerous request of defendant Donegan for a ratable job assignment. Not only did Defendants Gerard Donegan, John Mulligan, Louise Kanion and Robert Wilson fail/refuse plaintiff any job assignment, but when plaintiff was asked to participate in a training at Region 9 for an Impartial Hearing by one of the Impartial Hearing attorney because of plaintiff's legal background, Defendants refused to allow plaintiff to participate in the training and directed him to return to the "Dunce Corner" site of broken fax machines copiers and other debris. Plaintiff remained in that status for more than two years under defendants Gerard Donegan, and the other defendants named herein, including defendant Claude Hirsh, Esq., until his involuntary transfer from Region 9 to Region 1 in September of 2008.

43.     On the last day of the June calendar school day of 2009, plaintiff was summoned to the office of defendant Gerard Donegan, and was told not to "clock out" until he received a letter from the personnel Director Judith Rivera. At or about 3 O'clock pm that afternoon, a letter was delivered to plaintiff with the instruction that he was to report to Region 1 in the Bronx and Report to Ms. Marie Douyon, the CSE Chairperson for Region 1.  Plaintiff was the only African American male working at Region 9, his departure meant that there were no African American male teachers working in that office. No explanation was given plaintiff as a reason for his transfer.

15.

44.    In August of 2008, plaintiff reported to CSE 1 as per the DOE directive above described. The CSE 1 Chairperson, Rosetta Brownlee, a defendant herein, assigned plaintiff to assist in directing parents and others as they sought to register their children. In or about  March of 2009 plaintiff was assigned to work as the CSE 1 District Representative at the CSE 1 Impartial Hearings.

45.    Plaintiff served in this capacity from March of 2009 to October of 2009, including the summer months of July and August wherein he earned additional income of approximately $6,000 as part of the CSE 1 Summer "per session" at the rate of $44 per hour. In October of 2009 plaintiff was abruptly removed from that assignment without explanation and has not been allowed to return to that position resulting in a loss of several thousand dollars in income. Plaintiff was never told why or the basis of his removal. He was told only that someone filed a complaint against him.

46.    Upon information and belief, plaintiff was removed from that position as a result of defendants Donegan, Mulligan and Wilson, along with Defendants Stacey Reeves and Lynn Ameleh, Esq. one of the Impartial Hearing Officers employed by defendant, DOE.

48.    Upon information and belief, no Notice of Claim was required to be served on defendants on claims brought pursuant to Section 1981, et als.

### FIRST CAUSE OF ACTION

49.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 48, as if fully set forth herein.

50.     Defendants Claude Hirsh, Esq. provided plaintiff with incorrect legal advise when he directed plaintiff to file a Notice of Claim against the defendants herein since no notice of claim is required in a Civil Rights Action. It was the filing of that Notice of Claim that resulted in plaintiff loosing his claim against defendant DOE, and the other defendants not complying with any part of the March 18, 2003 agreements resulting in and causing plaintiff:

51.     a)      To suffer physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment,

        b)      To be held up to ridicule, loss of reputation as a result of the loss of his position as a classroom teacher and placed in what has become known as the "Rubber Room" the placed where teachers accused of wrongdoings of every type and presumed guilty until proved innocent,

        c)      A loss of more than five years of his professional career, including but not limited to:

                1.      His career as New York State licensed public and private elementary classroom teacher,

                2.      Licensed and State Certified School District Administrator, including jobs and positions such as:

17

      i)  School District Administrator such as District

          Superintendent, Deputy Superintendent and

          Regional Executive and Deputy Director,

     ii)  Educational Administrator holding positions

          such as Chairperson or Assistant Chairperson,

          Committee on Special Education (CSE),

    iii)  School Building Principal & Assistant

          Principal, and Special Education Supervisor.

          Each of the foregoing constituted and

          represented significant damage to plaintiff's

          career as a New York State and City educator,

          and as a result will never have the opportunity

          to work as an administrator, principal or

          assistant principal, and for plaintiff having

          to obtain mental health counsel for the past

          several years..

## SECOND CAUSE OF ACTION

52.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-51 as if fully set forth herein.

53.    In addition, one or more of the following defendants, either individually, or as a group, i.e. defendants Gerard Donegan, John Mulligan, and Robert Wilson,

Louise Kanion, Peter Haney, and Lawrence Becker subjected plaintiff to unequal and unfavorable conditions of employment, as a result of defendant Department of Education not complying with the PCSS, and because of plaintiff's race, age, gender and religion in violation of Section 42 USC 1983, defendants either jointly or individually:

        a)      Refused to assign plaintiff a ratable employment
                   assignment for any of the consecutive years
                   beginning in the Fall of 2003 to 2008,
                   even though plaintiff was, and is, licensed and
                   New York State Certified to teach and to serve in
                   an administrative position,

        b)      Ordered plaintiff to sit inside one Rubber Room holding rooms for
                   staff facing Disciplinary Charges, even though defendants
                   had signed the PCSS, and later ordered plaintiff to a new
                   location in a different building, to a site wherein plaintiff
                   had no contact with other teachers or staff, but rather was
                   forced to sit among broken equipment, furniture and fixtures
                   from 2003 to 2008,

        c)      Defendant Gerard Donegan refused to allow plaintiff to
                   participate in CSE Reviews, even when he was asked to
                   participate by the Review Team's chief psychologist who knew
                   that plaintiff is a licensed Special Ed. Teacher and is qualified.

54.    As a direct and proximate result of defendants' actions, Plaintiff suffered physical, mental anguish and emotional distress and injury, humiliation and embarrassment which required plaintiff to obtain professional counseling from years 2000 the present.

### THIRD CAUSE OF ACTION

55.    Plaintiff incorporates by reference the allegations  set forth in Paragraphs 1-54 as if fully set forth herein.

56.    Defendants Gerard Donegan, John Mulligan, Louise Kanion, Robert Wilson and Peter Haney violated plaintiff by assigning and subjecting him to an unsafe seating area where every day, plaintiff was forced to navigate around and pass broken fax machines and copiers stacked in corners and passageways. Junk equipment that was neither cordoned off, labeled unsafe or stored in an area away from where plaintiff was required to walk and sit every day, several times a day. Moreover, it took several months and numerous complaints for plaintiff to be assigned even a telephone and a computer by Defendant Louise Kanion. That area was also isolated from other staff.

57.    As a direct and proximate result of defendants' actions, plaintiff suffered physical, mental and emotional injury and pain, mental anguish, humiliation and embarrassment, and has been under the care of psychologist at Flushing Hospital's Mental Health Clinic.

### FOURTH CAUSE OF ACTION

58.    The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-57 as if fully set forth herein.

59.     Defendants Dr. Caroline Corbett, John Mulligan, Louise Kanion, Robert Wilson and Peter Haney violating plaintiff's rights  pursuant to the 14th Amendment and 42 USC 1983 by failing to authorize plaintiff an appropriate job assignment even though each had full knowledge of the PCSS and the supplement sign by Theresa Europe, Esq.. reinstating plaintiff to full rights as a teacher and an employee of the DOE.

60.     As a direct and proximate result of defendants' actions, plaintiff suffered physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## FIFTH CAUSE OF ACTION

61.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 60 as if fully set forth herein.

62.     Defendants Lorraine Masten, Surita Ryan and Dr. Caroline Corbett and Peter Haney subjected plaintiff to unequal and unfavorable conditions of employment due to his race, age, gender and religion in violation of the 4th and 14th Amendments to the Constitution and 42 USC 1983 causing him injury and emotional distress.

63.     As a direct and proximate result of defendants' actions, plaintiff suffered physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## SIXTH CAUSE OF ACTION

64.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 63 as if fully set forth herein.

65.     Defendants Denise Hallet, Lawrence Becker, Aderemi Bello, Mary

Padilla, Myrterlena Rivera, and Edna Vega, subjected plaintiff to unequal and unfavorable conditions of employment due to his race, age, gender and religion in violation of the 14th Amendment to the Constitution and 42 USC 1983 causing him injury and emotional distress, and violated the PCSS and the supplemental agreement executed by Theresa Europe, Esq. when they denied his request for a transfer, and refused to allow him to return to his teaching position at Public School 5 and forced him to remain at CSE Region 9.

66.     As a direct and proximate result of the defendants' actions, plaintiff suffered physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## SEVENTH CAUSE OF ACTION

### BREACH OF STIPULATION OF SETTLEMENT (PCSS),

### CONTRACT AGREEMENT.

67.     Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-66, as if repeated herein.

68.     In December of 1998, defendant DOE removed plaintiff from his classroom teaching position, suspended plaintiff and filed fourteen Specifications and Charges against plaintiff pursuant to Section 2590- j and Section 3020-a of the Education Law for the purpose of terminating plaintiff from his position as a classroom teacher. Since that time plaintiff has never been allowed to return to his position as a classroom teacher.

69. As a result of defendants' action, plaintiff was issued Unsatisfactory Ratings "UR's" for the school year periods 1998/99, 1999/00, 00/01, 01/02 and 02/03, representing five consecutive years of Unsatisfactory Ratings (UR's). As a result of his suspension from his teaching position and the "UR's" plaintiff was removed from the "Eligibility List" for work transfers, lateral transfers, upward promotions, obtaining additional licenses, salary increases, and all other employee benefits available to non suspended employees. Plaintiff's career as a classroom teacher was effectively ended when defendant DOE filed the false charges against him.

70. In that same year, 1998, plaintiff had just received his school administrators license which plaintiff has never had the opportunity to capitalize on, being adversely affected by the filing of the false charges. Nor has plaintiff ever been able to capitalize on his licensing and certification as a Special Education teacher due to the wrongful conduct of defendants complained of herein.

71. On March 18, 2003, plaintiff and defendant DOE entered into the PCSS contract agreement. That agreement provided in part that defendant would remove each of the "UR's issued for the five years and replace them with "S's", the acceptable rating for evidence of satisfactory performance by an employee of the DOE. (See Exhibit A annexed hereto ).

72. At that settlement conference, at plaintiff's request, defendant Theresa Europe wrote the following:

"To Whom it may concern, the disciplinary matter
against Dr. Simpson Gray has been resolved. Due to
his excellent service while Assigned to the
Committee on Special Education in Community
School District 7, he has been asked to remain to
assist with impartial hearings.  Mr. Gray's U ratings
for the last 5 years have been reversed to S ratings."
Emphasis added.

73.     Armed with that letter, and the PCSS, plaintiff immediately began

applying for supervisory and other administrative positions in an effort to resume his

career as a classroom teacher, and his aspirations to become supervisor in the Department

of Education, believing that defendants had reversed the "U" Ratings. From March of

2003 up to and including the date of filing this complaint, plaintiff has made more than

one hundred (100) attempts to obtain a new or higher position in the Department of

Education, upon information and belief each was rejected due to defendant's intentional

breach of the Agreement.

74.     For example:  On May 16, 2003 Plaintiff, by letter, was notified that his

application for the position of Assistant Principal (AP) at Alfred E. Smith Career

and Technical Education High School was denied.

75.     Upon information and belief, the denial came as a result of systematic

review of the New York City Department of Education Office of Personnel

Investigations, and that review lead to plaintiff being deem unsatisfactory or ineligible for the position.

76.     On June 13, 2003 Plaintiff, by postcard, was notified that his application for the position of AP of 1.5.61 in Queens was denied.

77.     Upon information and belief, the denial of the application came as a result of review of the New York City Department of Education Office of Personnel Investigations, and as a result of that review plaintiff was deemed unsatisfactory.

78.     On May 10, 2004 Plaintiff, by letter, was notified that his application for the position of A Principal of Public School 25 was denied.

79.     Upon information and belief, the denial of the application came as a result of review by the New York City Department of Education Office of Personnel Investigations, and that review was unsatisfactory.

80.     On July 14, 2004 Plaintiff, by letter, was notified that his application for the position of Education Administrator, Senior Staff Development and Training Instruction Specialist (Director, Secondary School Systems) Level II (Position No. 03869) was denied.

81.     On September 28, 2004, Plaintiff, by letter, was notified that his application for the position of Vacancy Notice 14 for Teacher in the Virtual Enterprise Central Office was denied.

82.     Upon information and belief, the denial of the application came as a result of review by the New York City Department of Education Office of Personnel

Investigations, and that review was unsatisfactory.

83. On November 19, 2004, Plaintiff, by letter, was notified that his application for the position of Assistant Principal at I.S. 318 was denied.

84. From that time, and up to the present time plaintiff has not been able to secure an administrative or supervisory position, and upon information and belief, the primary reason for plaintiff not being able to secure another position is directly and proximately related to defendants failure to do what they had agreed to do as per the Post Charge Stipulation of Settlement, and the resulting "blacklisting" as a secondary consequence of defendants failure to remove the "U" ratings.

85. In July of 2003, plaintiff received a DOE letter that the transfer had been granted. However, in or about the latter part of August, plaintiff received a second letter over the signature of defendant Denise Hallett that the granted transfer had been rescinded, because of "U" Ratings on his employment record. The existence of the "U" Rating was a breach of the contract because the letter directed plaintiff to return to P.S. 5 for his assignment for 2003/2004 S/Y. At that point plaintiff was not certain what had happened or why he had received the letter from Ms. Hallett.

86. The next month, in September of 2003, plaintiff attempted to return to P.S. 5 as per the letter, but he was ordered by the building Principal, Mary Padilla, not to enter the building under any circumstances, and was told by Ms. Padilla's representative to contact the Region 9 Office. Mary Padilla is one of the named defendants herein.

26.

87.    On or about September 10, 2003, plaintiff reported to the Region 9 Office on East 28th Street where he remained for more than one month, before being directed to report to the Region 9 Regional Operations Center (ROC) at the 7th Avenue address, where he remained with no explanation or reason given until June of 2008.

### EIGHTH CAUSE OF ACTION

88.    Plaintiff repeats and incorporated each and every allegation in paragraphs 1 through 87 as if repeated herein.

89.    In or about October 15, 2009, plaintiff working on Impartial Hearing for and on behalf of Rosetta Brownlee, CSE 1 Chairperson, was told that he would no longer be assigned to Impartial Hearings. This occurred after having served as the CSE 1 District Representative for the preceding nine months. Plaintiff, who has a legal background, asked why he was being relieved of this responsibility which had allowed him to earn an extra $8-10,000 over the preceding nine months. He was told that someone had filed a complaint. That someone was Stacy Reeves, defendant herein. Upon information and belief, Ms. Reeves acted on the complaint of Impartial Hearing Officer Lynn Ameleh, Esq. who had, the day before, stated on the transcript record that plaintiff was not qualified to hold that position. Upon information belief the comments made by IHO Ameleh were racially motivated.

90.    Neither Ms. Brownlee or Ms Reeves held an inquiry to investigate the claims, nor did either ever state that it was Ameleh who made the complaint.

91.    As a result of the actions of defendants Brownlee, Reeves and

Ameleh, plaintiff has been denied working in a field that was clinically and financially beneficial to him.  Therefore, plaintiff is seeking a finding by this Court of wrongdoing and liability by each for violating plaintiff's civil rights and his right to earn income and a living performing a job that he is qualified to perform without regard to his race, ethnicity or gender.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff request relief as follows:

**(A)** Compensatory damages against the defendants jointly and severally; past and future, including, but not limited to pain and suffering, and emotional distress, economic losses and injuries according to proof;

**(B)** Punitive damages; and

**(C)** Such other relief, as is just and proper under the circumstances.

## JURY DEMAND

Trial by jury is demanded on all issues for which a jury trial is available.

DATED:  ~~June 30~~ July 1, 2010
Jamaica, New York  11434

Rev. Dr. Simpson Gray

165-30 145Th A
Jamaica NY 11434
347-245-0429

28

EASTERN DISTRICT COURT OF THE OF NEW YORK
COUNTY OF KINGS

---------------------------------------------------------------------------------X

DR. SIMPSON GRAY,

                                  PLAINTIFF,                          **AFFIDAVIT**

                    -AGAINST-                            **INDEX No.:**

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF EDUCATION "DOE", MICHAEL
BLOOMBERG, MAYOR OF THE CITY OF NEW YORK,
JOEL KLEIN, CHANCELLOR OF THE NEW YORK CITY
PUBLIC SCHOOLS, THE DEPARTMENT OF EDUCATION
"DOE", DENISE HALLET, THERESA EUROPE, GERARD
DONEGGAN, ROBERT WILSON, JOHN MULLIGAN, PETER
HANEY, LOUISE KANION, ADEREMI BELLO, DR. EDNA
VEGA, HELENE CRAWFORD, MARY PADILLA,
MYRTERLENA RIVERA, LAWRENCE BECKER,
DR. CAROLYN CORBETT, LORRAINE MASTEN, SURITA
RYAN, STACY REEVES, MARIAM MAHMOOD-QURESHI
AND ROSETTA BROWNLEE in their capacities as current or
former employees of the DOE, CLAUDE HIRSH, Esq.
individually, LYNN AMELEH, Esq., individually,

                                DEFENDANTS.

Dr. Simpson Gray, being duly sworn, deposes and says:

I am the plaintiff in the above captioned matter. I affirm under penalty of perjury that

the allegations contained herein are true to the best of my knowledge.

Sworn to before me this 1st day of July, 2010

_____ Notary Public

KAMAL P. SONI
Notary Public, State of New York
No. 01SO6089949
Qualified in Kings County
Commission Expires March 31, 2011

1