FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ MAR 2 0 2012

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DR. SIMPSON GRAY,

                     Plaintiff,

      -against-

THE CITY OF NEW YORK; THE NEW YORK CITY
DEPARTMENT OF EDUCATION ("DOE"), MICHAEL
BLOOMBERG, MAYOR OF THE CITY OF NEW YORK;
JOEL KLEIN, CHANCELLOR OF THE NEW YORK
CITY PUBLIC SCHOOLS OF THE DEPARTMENT OF
EDUCATION ("DOE"); DENISE HALLET; THERESA
EUROPE; GERARD DONEGGAN; ROBERT WILSON;
JOHN MULLIGAN; PETER HANEY; LOUISE KANION;
ADEREMI BELLO; DR. EDNA VEGA; HELENE
CRAWFORD; MARY PADILLA; MYRTERLENA
RIVERA; LAWRENCE BECKER; DR. CAROLYN
CORBETT; LORRAINE MASTEN; SURITA RYAN;
STACY REEVES, MIRIAM MAHMOOD-QURESHI;
and ROSETTA BROWNLEE, Individually, and in their
capacities as current or former employees of the DOE;
CLAUDE HIRSH, ESQ., Individual, LYNN AMELEH,
ESQ., individually,

                    Defendants
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-3039 (SLT)(CLP)

**TOWNES, United States District Judge:**

      Plaintiff Dr. Simpson Gray, who is currently employed by defendant New York City

Department of Education (the "DOE"), brings this *pro se* action pursuant to 42 U.S.C. §1983;

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; and the New York State

Human Rights Law, N.Y. Exec. Law §296 against the City of New York and its Mayor; the

DOE, its former Chancellor, and 19 other former or current DOE employees (collectively, the

"DOE Employees"); and two lawyers: Claude Hersh (incorrectly named "Hirsh" in the caption)

and Lynn Almeleh (incorrectly named "Ameleh" in the amended complaint).  Now pending

before this Court are three motions pursuant to Fed. R. Civ. P. 12(b) to dismiss plaintiff's

amended complaint – a motion by Hersh, a *pro se* motion by Almeleh, and a motion by the
Corporation Counsel on behalf of the remaining defendants (collectively, the "City Defendants")
– and plaintiff's motion pursuant to Fed. R. Civ. P. 15(a) for leave to further amend his
pleadings.  For the reasons set forth above, the motions brought by Hersh and Almeleh are
granted; the City Defendants' motion is granted in part and denied in part; and plaintiff's motion
for leave to amend the complaint is granted to the extent set forth herein.

### BACKGROUND

The following facts are drawn from the plaintiff's Amended Verified Complaint, filed
March 4, 2011 (the "Complaint"), the allegations of which are assumed to be true for purposes of
analyzing defendants' motions to dismiss.  Plaintiff is a "black American, heterosexual male"
and a "born again Christian," who was 69 years old at the time he drafted the Complaint
(Complaint at ¶10).  Although plaintiff taught from 1975 to 1979 at LaGuardia Community
College (*id.* at ¶33), he was first hired by DOE in September 1991, a few months after
befriending Jose Graciano, the longtime principal of P.S. 5, at a management class at Pace
University (*id.* at ¶30).  According to plaintiff, who is a disbarred attorney, Graciano offered him
a "teaching position" at his school because he was "impressed with plaintiff's background in law
and business, and said he thought that plaintiff could help him in keeping P.S. 5 a top ranked
school in the District" (*id.*).

Over the subsequent five years, plaintiff worked closely with Graciano, both teaching a
class and helping to manage the school (*id.* at ¶31).  Because P.S. 5 did not have an assistant
principal at the time, plaintiff performed various administrative assignments including chairing
the School Based Management and Shared Decision Making Team (*id.* at ¶32).  However, "[i]n .

. . or about the summer of 1995/1996, [Graciano] announced that he would be retiring at the end of the new school year, and that there would be a search for a new principal" (*id.* at ¶31).

Thereafter, the District Superintendent, defendant Dr. Edna Vega, assigned an assistant principal, Irma McCarthy, to work with Graciano and "to fill in for him if no new principal had been selected before he left" (*id.*). Plaintiff apparently got along well with McCarthy. After Graciano retired, plaintiff worked with her in the same manner in which he had worked with Graciano and McCarthy told plaintiff that she was grateful for his help (*id.*).

Plaintiff did not have a supervisory license at the time and, therefore, was ineligible to apply for the position of principal of P.S. 5 (*id.* at ¶31). However, McCarthy was among the candidates for the job (*id.* at ¶34), and plaintiff, who by then had been elected as the United Federation of Teachers' union representative for the school (*id.* at ¶35), threw his support behind her. Plaintiff not only petitioned the Superintendent and Community School Board to select McCarthy, but "openly opposed" the other candidates, including defendant Helene Crawford (*id.* at ¶34). Vega, however, favored Crawford and insisted that the Community School Board select her (*id.*).

In the Fall of 1997, Crawford assumed her new post and McCarthy left P.S. 5 (*id.* at ¶35). Crawford informed plaintiff that he "would be returning to classroom teaching duties" (*id.*). Plaintiff, however, continued to have "numerous meetings" with Crawford in the course of handling teacher complaints in his capacity as union representative (*id.* at ¶36). Crawford gave plaintiff a "cold reception," but plaintiff initially attributed that to his role as union representative (*id.*).

During the remainder of 1997 and the beginning of 1998, Crawford and other members of her staff repeatedly visited plaintiff's fifth-grade classroom to observe his teaching and to

"comment on what plaintiff was doing wrong as a classroom teacher" (*id.* at ¶37).  In the Spring

of 1998, Vega removed plaintiff from the classroom and reassigned him to the District Office

(*id.*).  In a May 15, 1998, letter informing plaintiff of her decision, Vega stated:

> Principal Crawford has raised the following concerns regarding
> you:
>
> •     You're an unsatisfactory teacher.
> •     There have been two parental complaints alleging your
>         poor communication with them.
> •     Numerous negative and inaccurate letters in the staff lounge
>         written and signed by you.
>
> Until I have completed investigating these matters, you are
> reassigned to the District Office.

(*Id.*, Ex. 8, p. 1).[1]

Plaintiff promptly filed suit against Vega and Crawford in the Supreme Court of the State

of New York, Bronx County, and "obtained an Order to Show Cause" (*id.* at ¶¶39, 52).  The

Complaint does not provide any specific information regarding the lawsuit or the Order to Show

Cause, other than to state that the latter was served on Vega and Crawford (*id.* at ¶39).  However,

on May 26, 1998, Vega wrote plaintiff another letter, informing him that the "issue and

concerns" raised by Crawford had been investigated and that he could return to P.S. 5 on May 27,

1998 (*Id.*, Ex. 8, p. 2).  This letter advised plaintiff that "Ms. Myrta Rivera," a Deputy

---

[1]This letter and other exhibits to the Complaint are contained in a spiral-bound book
which was filed in hard copy and not scanned onto the Court Electronic Case Filing System.
Although the book contains only 13 "Exhibits," several of these "Exhibits" contain many
separate documents, most of which do not bear any page numbers.  For ease of reference, this
Court will deem the pages to have been numbered sequentially, with the first page of each exhibit
referred to as "page 1."

Superintendent for Curriculum and Instruction, would be formally observing him in the classroom, and that he would be advised when this observation would occur (*id.*).[2]

According to the Complaint, Crawford then "coerced, intimidated or bribe[d]" the parent of one of plaintiff's fifth-grade students, causing the parent to claim that plaintiff "was proselytizing his religious beliefs to his students . . . and . . . had Bibles in his classroom library" (*id.* at ¶53). On December 10, 1998, Vega sent plaintiff yet another letter, informing him that "due to the serious nature of the allegations" against him, she was again removing him from his duties as a teacher at P.S. 5 (*Id.*, Ex. 8, p. 3). Plaintiff was directed to report to the District Office of Community School District 7 (*id.*), where he remained for about a month before being directed to report to Cynthia Rodriguez at the District's Committee on Special Education (the "CSE") (*id.* at ¶54).

In January 1999, plaintiff was charged with "14 Specifications and Charges and alleged violations," none of which are described in the Complaint (*id.* at ¶55). The hearing on these disciplinary charges was not commenced until sometime in 2002 or 2003 (*id.*). According to plaintiff, the parent, who testified at the first day of the hearing, "was completely not credible, and was treated that way by the Hearing Officer" (*id.* at ¶58). Crawford and defendant Rivera, who had succeeded Vega as the Superintendent of District 7, testified at the second day of the hearing, but their testimony allegedly "added nothing to the case" (*id.*).

Plaintiff alleges, upon information and belief, that defendant Theresa Europe – the attorney who represented the DOE at the hearing – then proposed a settlement (*id.*). Defendant Claude Hersh, the union attorney who represented plaintiff at the hearing, recommended that

---

[2]This Court assumes that Myrta Rivera, who was later promoted to Superintendent, is the same person whom plaintiff has sued as "Myrterlena Rivera."

plaintiff accept the settlement rather than seek to dismiss the charges (*id.* at ¶27).  Plaintiff followed that recommendation and on March 18, 2003, executed a "Post-Charge Stipulation of Settlement" (hereafter, the "PCSS").

The PCSS is a three-page document, the first page of which is included as page 3 in Exhibit 2 to the Complaint and the last two pages of which comprise Exhibit 3.  In that stipulation, the DOE agreed to withdraw with prejudice the charges against plaintiff and Rivera agreed to change the "U" (or unsatisfactory) ratings which plaintiff had received for the five years between the 1997-98 and 2001-02 school years to "S" (or satisfactory) ratings (PCSS at ¶¶5-6).  Plaintiff, in turn, waived his "right to make any legal or equitable claims, or to initiate legal proceedings of any kind against the Department of Education or any agent or employee thereof, relating to or arising out of the facts and circumstances of [the] case, except to enforce [the PCSS]" (*id.* at ¶7).

The PCSS further provided that plaintiff would remain on a teacher's pay line and be entitled to any and all benefits provided to teachers under the collective bargaining agreement between the DOE and the United Federation of Teachers (*id.* at ¶3).  However, the PCSS did not provide that plaintiff would be returned to the classroom.  Rather, it provided that plaintiff would be reassigned to the CSE; would report to Rodriguez and Dr. Jeffrey Wapner or their successors; and would (a) "[c]ontinue to conduct CSE reviews as the representative for the [DOE]," (b) "[a]ssist with the preparation for the impartial hearings," or (c) have "[a]ny other responsibilities as mutually agreed upon" (*id.* at 2).

Although Rivera and defendant Chad Vignola – the Counsel to the Chancellor – were the only two people who signed the PCSS on behalf of the DOE, Europe provided plaintiff with a

letter summarizing the provisions of the PCSS.  This letter, addressed to "To Whom it May

Concern" and dated March 18, 2003, stated:

> This is to advise that the disciplinary matter against Simpson Gray
> has been resolved.  Due to his excellent service while assigned to
> the Committee on Special Education in Community School District
> 7, he has been asked to remain to assist with impartial hearings.
> Mr. Gray's U ratings for the last 5 school years have been reversed
> to S ratings.

(*Id.*, Ex. 4).

　　While the events preceding the execution of the PCSS are described in some detail in the

Complaint, subsequent events are only discussed in general terms, if at all.  For example, exhibits

submitted with the Complaint indicate that in June 2003 plaintiff applied to transfer from the

CSE to one of six schools (*id.*, Ex. 2, p. 1).  On July 24, 2003, plaintiff was notified by defendant

Denise Hallett, the DOE's Director of the Office of Field Services, Staffing and Information

(incorrectly named throughout the Complaint as "Hallet"), that he had been granted a transfer to

his fifth-choice school (*id.*, Ex. 1).  However, about one month later, Hallett rescinded the

transfer, sending plaintiff a form indicating that he was ineligible for the new position because

"Teacher applicants must have received satisfactory ratings in the three most recent years of

service" (*id.*, Ex. 2, at p. 2; Ex. 9).

　　The Complaint, however, does not allege any details relating to this incident.  While the

Complaint names Hallett as a defendant, it identifies her only as "an employee" of the DOE (*id.*

at ¶15).  The Complaint further alleges that "Hallet [*sic*] . . . was the person who initially notified

plaintiff that he was eligible for a transfer based on his record, and was the same person who

notified plaintiff that he was not eligible for a transfer to a new position . . . based on his record

of Unsatisfactory "U" Rating[s] from 1998-2002" (*id.*).  Although the Complaint cites to the two

Exhibits discussed in the preceding paragraph, the Complaint itself does not allege when Hallett acted or state what causes of action plaintiff seeks to raise against Hallett.

Exhibits submitted with the Complaint also reflect that, in the months following the execution of the PCSS, plaintiff applied for various administrative positions with the DOE. For example, there is evidence (1) that at some time prior to May 16, 2003, plaintiff applied "for the position of Assistant Principal, Administration at Alfred E. Smith Career & Technical Education High School" in the Bronx; (2) that at some time prior to June 13, 2003, plaintiff applied for an "Assistant Principal position at I.S. 61 in Queens;" and (3) that at some time prior to January 9, 2004, plaintiff applied "for the position of Assistant Principal, Special Education Schools at P.075Q" (*id.*, Ex. 11, pp. 13-15). Although it is clear that plaintiff was not hired for any of these positions, the Complaint does not specifically mention these applications or suggest that plaintiff is making any claims relating to the DOE's failure to promote him to these administrative positions.

According to a Notice of Claim form filed sometime in 2004, the DOE reassigned plaintiff to "a position that he did not agree to" on or about January 7, 2004 (*id.* at Ex. B, p. 2). Plaintiff believed that this reassignment violated the PCSS (*id.*), and consulted Hersh, the union attorney who had represented plaintiff at the disciplinary hearing. The Complaint does not allege exactly what transpired between plaintiff and Hersh. Indeed, the only details are set forth in a letter to plaintiff from Hersh, dated March 30, 2004 (submitted with the Complaint as Exhibit 7), which purports to memorialize a conversation that took place earlier that day.

That letter indicates that plaintiff told Hersh that he had met with representatives of Region 9, who promised to reassign him "to duties related to the Committee of Special

8

Education for Region 9" (*id.*).  Both plaintiff and Hersh agreed that this reassignment would
bring the DOE back into compliance with the PCSS (*id.*).  However, Hersh advised plaintiff:

> Should the reassignment not occur, you must contact me
> immediately.  I was informed that on January 7, 2004, you were
> assigned to perform job duties that possibly were not appropriate
> pursuant to the stipulation of settlement.  Therefore, if the
> Department does not assign you appropriate duties, a notice of
> claim should be served no later than April 7, 2004.  At this time, I
> will not be taking any further action on your behalf.

(*Id.*, Ex. 7, pp. 1-2).  Hersh also reminded plaintiff that he had been informed by DOE personnel
that they were "reprocessing the correction of the unsatisfactory ratings which were to be
changed to satisfactory ratings pursuant to the stipulation," and that neither he nor plaintiff had
"been able to discover any evidence to indicate that the unsatisfactory ratings [were] still in any
Department computer system" (*id.*, Ex. 7, p. 1).

The Complaint reflects that, as promised, plaintiff was reassigned to the CSE at District
9, although the Complaint alleges that the reassignment took place in 2003 rather than in 2004
(*id.* at ¶41).  Nonetheless, plaintiff commenced a *pro se* action in the Supreme Court of the State
of New York, Bronx County, alleging, *inter alia*, breach of the PCSS.  Although plaintiff alleges
that the "Honorable Paul G. Fineman [*sic*] dismissed [the breach of contract claim] on procedural
grounds" (*id.* at ¶46), this Court will take judicial notice that Justice Feinman held that plaintiff
lacked the legal capacity to sue on his notice of claim because he failed to disclose it in the
course of bankruptcy proceedings he initiated in September 2004.  *See Gray v. City of New York*,
No. 116607/2004, 2008 WL 1050443, at *5 (N.Y. Sup. Ct. April 1, 2008), *aff'd*, 58 A.D.3d 448
(N.Y. App. Div. 2009).

Plaintiff worked at District 9 until 2008 but, although he was licensed as a Special
Education and General Education teacher (Complaint at ¶18(b)), was never "permitted to work in

9

his licensed area or any other licensed area, by defendant DOE" (*id.* at ¶41). Rather, plaintiff was

assigned to the Records Room, where he performed work "involving the filing and retrieving of

student records for the Review Team members and participants conducting reviews" (*id.* at

18(d)). Despite his legal background and other qualifications, plaintiff was not allowed to serve

on any CSE Review Teams himself (*id.* at ¶18(b)), and was refused reassignment to the Impartial

Hearing Office (*id.* at ¶18(e)). Plaintiff was "[g]enerally disrespect[ed]" and "repeatedly referred

to . . . in derogatory terms as being incompetent, unintelligent, and unqualified" (*id.* at ¶18(b) and

(g)). In addition, plaintiff's name was "conspicuously omitted" from publicly distributed lists of

job assignments, allegedly "for the purpose of embarrassing and humiliating plaintiff, and

holding him up to ridicule in the eyes of his co-workers" (*id.* at ¶18(c)).

     The Complaint attributes these acts to defendants Robert Wilson, Gerard Donegan, John

Mulligan, Peter Haney, Louise Kanion, and Lawrence Becker, stating that these individuals

"functioned and worked together . . . as a group to deny plaintiff his civil rights" (*id.* at ¶18).

However, the Complaint does not allege what specific acts or omissions were committed by each

of these six defendants, much less when the specific acts or omissions took place. To be sure,

these defendants – with the possible exception of Kanion and Becker – are mentioned in the

many grievances submitted with the Complaint as Exhibit 5.[3] However, while these grievances

identify the positions held by the other four defendants, they do not allege any constitutional

violations. Rather, they allege various violations of the PCSS and the collective bargaining

agreement relating to job assignments, work hours, working conditions, and the like.

---

[3]These grievances identify a Peter Heaney (presumably, defendant Peter Haney) as the
Superintendent of Region 9, Gerard Donegan (incorrectly identified as "Doneggan" in the
caption) as the CSE Chair for Region 9, John Mulligan as the Deputy Director of CSE 9, and
Robert Wilson as the Executive Director of "ISC" – an entity not otherwise identified in the
Complaint or the grievances.

The Complaint also alleges that three other individuals – defendants Dr. Carolyn Corbett, Lorraine Master and Surita Ryan – "followed the directive(s) of defendants Peter Haney and Lawrence Becker . . . to ignore plaintiff and leave him unassigned to any job or position indefinitely" (*id.* at ¶19). However, the Complaint does not allege what positions these individuals held, what specific acts they could have taken but failed to do, or when the omissions occurred. Moreover, none of these three defendants appear to be mentioned in the grievances or other exhibits submitted with the Complaint.

In September 2008, plaintiff was transferred from District 9 to District 1 (*id.* at ¶64). He was again assigned to the CSE, which was chaired by defendant Rosetta Brownlee (*id.*). Brownlee initially struck a conciliatory chord, telling plaintiff, "We have heard some bad things about you, but you don't have to worry, we don't operate that way here . . ." (*id.*). Brownlee then assigned plaintiff to the Impartial Hearing Unit ("IHU") where he represented the CSE in administrative hearings conducted before an impartial arbitrator (*id.* at ¶24). Although that job did not require a legal degree (*id.* at ¶25), it apparently paid plaintiff "more than $5,000 in supplemental income" (*id.* at ¶64).

Plaintiff represented the District at the hearings for approximately one year (*id.*). During that time, however, at least two people filed complaints against him. First, defendant Mariam Mahmood-Qureshi, an attorney for the DOE, filed a complaint with Brownlee, claiming that plaintiff "was not competent to hold and fulfill his job responsibility" (*id.* at ¶21). Second, defendant Lynn Almeleh, an Impartial Hearing Officer, filed a complaint opining that plaintiff was incompetent and "requesting that plaintiff be barred from future hearings" (*id.* at ¶22).

As a result of one or both of these complaints, plaintiff was removed from the job. It is unclear, however, who made the decision to remove plaintiff. The Complaint first alleges that

11

defendant Stacey Reeves, the Director/Supervisor of the IHU (named in the caption as "Stacy Reeves"), "acted on [Almeleh's] complaint without ever contacting plaintiff . . . which resulted in plaintiff being removed . . ." (*id.* at ¶23). The Complaint then alleges that it was Brownlee who "abruptly removed plaintiff from that assignment . . . based on [Almeleh's] . . . unsubstantiated complaint against plaintiff" (*id.* at ¶25). Finally, the Complaint makes the following, incomprehensible allegation:

> Defendant Stacey Reeves, without any investigation of the Ameleh's [*sic*] complaint, in consultation with Defendants Donegan and Mulligan, and group participants, of which Brownlee is a member, about plaintiff's age, race, gender, his being a practicing Christian and removal from the Impartial Hearing Unit (*id.*).

On October 19, 2009, August 9, 2010, and October 28, 2010, plaintiff filed grievances relating to his removal from this job (*id.*, Ex. 5, pp. 39-41, 49-56). Although the Complaint alleges that plaintiff filed over 200 grievances (*id.* at ¶70), it does not specifically discuss these (or any other) grievances, much less allege what, if anything, occurred as a result of these grievances. The Complaint does allege, however, that plaintiff was still working at the CSE in District 1 at the time he filed the Complaint (*id.* at ¶2).

***This Action***

On July 1, 2010, plaintiff commenced this action, naming the City of New York; its Mayor, Michael Bloomberg; the DOE; its then-Chancellor, Joel Klein; and 21 other individuals as defendants. With the exception of Hersh and Almeleh, the 21 individuals were all alleged to be DOE employees. These employees included not only all of the individuals identified as defendants above, but also two other individuals: Aderemi Bello, a DOE Administrator

12

responsible for the issuance of Certificates of Eligibility, and Mary Padilla, a principal at P.S. 5 who barred plaintiff from the school building in September 2003.

The original pleading purported to be a civil rights action, and four of the eight causes of action specifically alleged a violation of 42 U.S.C. §1983. However, two of the other four causes of action alleged pendent state claims: a legal malpractice action against Hersh and a breach of contract claim against the DOE. The remaining two causes of action were unclear but appeared to allege an intentional infliction of emotional distress claim against defendants Donegan, Mulligan, Kanion, Wilson and Haney, and some sort of civil rights claim against Brownlee, Reeves and Almeleh.

On March 14, 2011, plaintiff filed an Amended Verified Complaint – the operative pleading referred to as the "Complaint" herein. Although this Complaint, like the original pleading, characterizes this lawsuit as a "Civil Rights action" (Complaint at ¶1), it primarily alleges employment discrimination. Specifically, the Complaint repeatedly alleges that plaintiff was subjected to discrimination because of his race, gender, age and religious beliefs, and that he had been subjected to hostile work environments at various DOE worksites. Indeed, of the five causes of action alleged in the Complaint, one – the Second Cause of Action – specifically cites to 42 U.S.C. §2000e-2 and another – the first of two claims labeled the Third Cause of Action – primarily discusses the "Doctrine of Continuing Violations."

The only cause of action to even mention 42 U.S.C. §1983 is the second "Third Cause of Action," which consists to two one-sentence paragraphs. Section 1983 is mentioned only in the heading, which reads, "AS AND FOR A THIRD CAUSE OF ACTION BASED ON NEW YORK HUMAN RIGHTS LAW AND SECTION 1983." The first of the two paragraphs comprising this cause of action "repeats and incorporates by reference each and every allegation"

13

contained in the preceding 72 paragraphs (Complaint at ¶73), while the second paragraph states, "The allegations set forth in paragraphs 1-76 are also violation [*sic*] of the New York State Human Rights Law, Section 296, therefore plaintiff seeks compensation against the named defendants pursuant to that Statute as well" (*id.* at ¶74). Neither paragraph indicates which individuals plaintiff seeks to hold liable under §1983. Moreover, although the preceding paragraphs include occasional references to §1983 and violations of "the Fourth, Fifth and Fourteenth Amendments to the United States Constitution" (*see id.* at ¶¶3(c), 6, and 29), the Complaint does not indicate what acts or omissions are alleged to have been unconstitutional.

The remaining two causes of action allege pendent state claims. The First Cause of Action alleges breach of contract stemming from the failure to change the "U" ratings as promised (*id.* at ¶¶44-46). The Fourth Cause of Action appears to be a legal malpractice action against Hersh, alleging that once "plaintiff made him aware" of the failure to comply with the PCSS, "Hersh had a greater duty than to simply tell plaintiff to file a grievance" – namely, "a duty to intervene since he was one of the signers of the PCSS" (*id.* at ¶76).

### *The Parties' Motions*

All of the defendants now move to dismiss the Complaint. Defendant Hersh moves to dismiss the Fourth Cause of Action arguing, *inter alia*, that plaintiff's legal malpractice action is time-barred. Although it is unclear whether plaintiff intended to include Hersh as a defendant in his cause of action under §1983, Hersh argues that he is not a state actor and cannot be liable under that statute.

Defendant Almeleh also moves to dismiss, arguing that the Complaint does not meet the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and progeny. Almeleh further argues that, even if the Complaint can be read as alleging a §1983 claim against

14

her, she did not violate plaintiff's constitutional rights by telling Reeves that plaintiff was not qualified to hold his position as the representative for District 1's CSE.

The remaining defendants – all of whom are represented by the Corporation Counsel of the City of New York (collectively, the "City Defendants") – move to dismiss on multiple grounds. Although the City Defendants' Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint (the "City Defendants' Memo") contains five points, the first two of these encompass several arguments. For example, the First Point raises three different statute of limitations arguments: that any §1983 claims arising from actions or omission that occurred before July 1, 2007, are barred by the three-year statute of limitations applicable to such claims; that any §1981 claims arising from actions or omission that occurred before July 1, 2006, are barred by the four-year statute of limitations applicable to such claims; and that any state law claims brought pursuant to the New York State Human Rights Law are time-barred if they are based on acts that occurred before July 1, 2009.

Similarly, the Second Point consists of five separate arguments. First, the City Defendants – citing to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Twombly*, 550 U.S. 544 – argue that the Complaint fails to state a claims against any of the City Defendants. Second, the Corporation Counsel argues that the Complaint does not state a §1983 claim against either Mayor Bloomberg or Chancellor Klein because it does not allege they were personally involved in the violations of any constitutional rights. Third, the Corporation Counsel argues that plaintiff's §1983 claims against the remaining individual City Defendants rely on "bald assertions and conclusions of law" and are "without any factual support whatsoever" (City Defendants' Memo at 8-9). Fourth, relying on *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), the Corporation Counsel argues that plaintiff has failed to allege a violation of a municipal policy or

15

custom and, therefore, has not adequately pled a §1983 cause of action against the DOE. Finally, the City Defendants argue that plaintiff's Title VII hostile work environment claim fails as a matter of law because plaintiff has not exhausted his administrative remedies.

The City Defendants' three remaining points each contain only a single argument. The Third Point argues that all claims against the individual City Defendants must be dismissed on qualified immunity grounds. The Fourth Point asserts that the City of New York is not a proper party to the action. The Fifth Point argues that all of plaintiff's State law claims must be dismissed for failure to serve a timely notice of claim.

Plaintiff has responded to all of defendants' arguments in a single, unsworn document entitled, "Notice of Cross Motion & Affidavit in in [*sic*] Support of Motion for 2nd 'Amended Complaint' and in Opposition to Defendants' Motions to Dismiss" (the "Plaintiff's Memo"). There are two documents attached to this submission: a right-to-sue notice issued by the U.S. Equal Employment Opportunity Commission (the "EEOC") on April 7, 2011, and an Amended Notice of Claim. The former does not indicate precisely when plaintiff filed his charge of discrimination, but states that the EEOC closed its file on this charge because "Charging Party already in court." The latter, filed on or about June 10, 2011, alleges that Brownlee, a Dr. Eva M. Goikuria – a non-party who is alleged to have become plaintiff's supervisor in April 2011 – and other unnamed individuals have retaliated against plaintiff for filing this action.

As its title implies, Plaintiff's Memo incorporates a cross-motion for leave to amend the Complaint pursuant to Fed. R. Civ. P. 15(a). Plaintiff principally seeks to amend the Complaint to allege Title VII retaliation claims in accordance with the allegations set forth in the Amended Notice of Claim attached to Plaintiff's Memo. In addition, plaintiff seeks to add Goikuria as a defendant to this action.

16

*DISCUSSION*

*Standard of Review*

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Twombly*, 550 U.S. at 555-56. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at ---, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). However, a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holdings L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

17

Typically, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

In this case, plaintiff, although proceeding *pro se*, was once an admitted attorney.[4] Indeed, although now disbarred, plaintiff continues to use the title, "JD," after his name. *See, e.g.,* Plaintiff's Memo at 13. As a former attorney, plaintiff is not entitled to the degree of liberality given to non-attorney *pro se* plaintiffs. *See, e.g., Moore v. City of New York*, No. 08-CV-2449 (RRM)(LB), 2011 WL 795103, at *1 (E.D.N.Y. Feb. 28, 2011); *Heller v. Emanuel*, No. 07-CV-1393 (ARR), 2007 WL 1491081, at *2 (E.D.N.Y. May 21, 2007).

This Court will also take judicial notice that defendant Almeleh, although appearing *pro se*, is an experienced attorney, having been admitted to practice in New York in 1983. *See* http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5459756. Accordingly, her submissions will be held to the higher standard that applies to submissions drafted by lawyers.

---

[4]Plaintiff was admitted to the bar in the State of New York in November 1979. *See Matter of Gray*, 110 A.D.2d 672, 672; 488 N.Y.S.2d 8, 9 (N.Y. App. Div., 2d Dep't 1985). He was disbarred in December 1985, following his conviction in the Supreme Court of the State of New York, Westchester County, on three counts of grand larceny in the second degree. *See Matter of Gray*, 113 A.D.2d 500, 501; 496 N.Y.S.2d 514, 514 (N.Y. App. Div., 2d Dep't 1985).

*Section 1983*

The first argument raised in the City Defendants' First Point and the first four arguments

raised in their Second Point relate to 42 U.S.C. §1983. This section provides, in pertinent part,

that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. §1983. This section itself "creates no substantive rights; it provides only a procedure

for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519

(2d Cir. 1993).

In order to maintain a §1983 action, a plaintiff must allege both that the conduct

complained of was "committed by a person acting under color of state law" and "deprived a

person of rights, privileges, or immunities secured by the Constitution or laws of the United

States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). "Negligence is not a valid basis for

liability under 42 U.S.C. § 1983." *Iwachiw v. New York State Dept. of Motor Vehicles*, 299 F.

Supp. 2d 117, 121 (E.D.N.Y. 2004) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)); *see*

*also Estelle*, 429 U.S. at 105-06. Moreover, "[i]t is well settled in this Circuit that 'personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under §1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v.*

*Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Plaintiff cannot base a defendant's

19

liability on *respondeat superior* or on "linkage in the . . . chain of command." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

The statute of limitations for actions under §1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Since Section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to §1983 is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Paige v. Police Dept. of City of Schenectady*, 264 F.3d 197, 199, n.2 (2d Cir. 2001). The date on which a §1983 action accrues is governed by federal law, *see Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997), which provides that an action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002); *see also Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980) ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.").

### The City Defendants' Arguments relating to Plaintiff's §1983 Claims

In analyzing the City Defendants' arguments relating to plaintiff's §1983 claims, this Court will begin with the first argument in the Second Point: that the Complaint fails to state a claim against the City Defendants. This argument is clearly meritorious with respect to the second of the Complaint's two third causes of action which, although entitled "THIRD CAUSE OF ACTION BASED ON NEW YORK HUMAN RIGHTS LAW AND SECTION 1983," does not mention §1983 thereafter. Rather, the body of this cause of action merely "repeats and incorporates by reference each and every allegation contained in paragraphs 1-72" of the

20

Complaint. Complaint at ¶73. This cause of action does not identify the defendants against whom plaintiff seeks to bring a §1983 claim, specify which acts or omissions are alleged to have violated plaintiff's rights under the United States Constitution or federal law, or indicate which rights were violated.

If plaintiff were not a former attorney, this Court would scour plaintiff's factual allegations in an effort to identify plausible §1983 claims. However, since plaintiff is a disbarred lawyer, this Court declines to do so in this case. Rather, this Court directs that plaintiff amend this cause of action to (1) specify the defendants against whom plaintiff seeks to bring a §1983 claim, (2) the acts or omissions allegedly committed by each defendant, and the dates on which the acts or omissions occurred, and (3) the specific Constitutional or federal statutory rights which were allegedly violated. In this connection, this Court notes that plaintiff's reference to a Fourth Amendment violation appears to be inapposite, since the Fourth Amendment pertains to illegal searches and seizures. Similarly, while this Court assumes that plaintiff's references to violations of the Fifth and Fourteenth Amendments pertain to the due process clause, plaintiff should specify the clause which was allegedly violated.

Since plaintiff's §1983 claims are unclear, it is impossible to adjudicate fully all of the City Defendants' remaining arguments relating to these claims. For example, in the first argument raised in their First Point, the City Defendants' rely on *Okure* in asserting that any §1983 claims arising from actions or omission that occurred before July 1, 2007, are time-barred. The City Defendants do not request that the §1983 claims against specific defendants be dismissed, however, noting "that it is difficult to discern from the prolix allegations in the . . . Complaint, which, if any, of plaintiff's claims are timely." City Defendants' Memo at 4.

While it is impossible to determine whether the §1983 claims as to some of the individual defendants are timely, it is clear that any §1983 claims relating to Vega, Crawford, Rivera, Hallett, and Europe are time-barred. Vega, Crawford, Rivera and Europe were involved in events that occurred at P.S. 5 and/or in the disciplinary proceedings that followed plaintiff's removal from the school in late 1998. However, the disciplinary proceeding was concluded in March 2003, with the execution of the PCSS. The only actions involving Hallett also occurred in 2003, when she sent plaintiff a form indicating that he was ineligible for a previously approved transfer from District 7 because he did not have satisfactory ratings in his three most recent years of service. Since none of these defendants are alleged to have committed acts that occurred on or after July 1, 2007, the §1983 claims with respect to these five defendants are time-barred. *See Okure*, 488 U.S. at 250-51.

This Court can also adjudicate the second argument raised in the City Defendants' Second Point, which argues that the Complaint fails to allege personal involvement on the part of Mayor Bloomberg and Chancellor Klein. The Complaint does not allege that these two individuals directed anyone to take action or not to take action with respect to plaintiff. Rather, the Complaint alleges only that these two individuals "promulgated rules and regulations" relating to the employment and recruitment, evaluation and training, and retention and termination of DOE personnel, and "are responsible for and allowed for the unchecked, illegal organizational authority exercised by [the DOE Defendants]." Complaint at ¶¶13, 14. These allegations, which essentially seek to impose liability on these two individuals based on a theory of *respondeat superior* or because they are in command of the DOE, do not suffice to state a claim under §1983. *See Hernandez*, 341 F.3d at 144.

22

The third argument in City Defendants' Second Point – arguing that the "bald assertions and conclusions" of law in the Complaint do not state a claim against the remaining individual City Defendants – echoes the first argument in the Second Point: that the Complaint fails to state a claim against the City Defendants. This Court cannot, therefore, adjudicate this argument, except with respect to Aderemi Bello and Mary Padilla. These defendants are mentioned in the caption, but the body of the Complaint contains no specific allegations concerning them. Accordingly, the claims against these two individuals are dismissed.

This Court can, however, adjudicate the fourth argument under the City Defendants' Second Point, in which the Corporation Counsel – citing to *Monell*, 436 U.S. at 691– argues that plaintiff has failed to state a claim against the DOE. *Monell* held that "a plaintiff suing a municipal corporation . . . under 42 U.S.C. §1983 must prove that the constitutional wrong complained of resulted from the corporation's official policy, custom, ordinance, regulation, or decision." *Rookard v. Health & Hospitals Corp.*, 710 F.2d 41, 45 (2d Cir. 1983). "As a municipal corporation cannot be held liable under §1983 on a *respondeat superior* theory, *Monell*, 436 U.S. at 691-94, . . . proof that the corporation employed a tortfeasor will not, standing alone, establish liability." *Rookard*, 710 F.2d at 45.

To state a claim against a municipality, "a plaintiff is required to plead . . . three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, . . . an inference [that such a policy or custom existed]." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993), *overruled on other*

23

*grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, (1993). "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Id.* However, "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, *see, e.g., City of Canton v. Harris*, 489 U.S. [378,] . . . 388-92 [(1989)], . . . or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges [of a] violation of the complainants' civil rights, *see, e.g., Fiacco v. City of Rensselaer*, 783 F.2d [319,] . . . 328 [(2d Cir. 1986),]" may be sufficient. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

In this case, the only specific allegations relating to the DOE and the City are essentially identical to the allegations concerning Mayor Bloomberg and Chancellor Klein. The Complaint alleges that both the DOE and the City "promulgated rules and regulations" relating to the employment and recruitment, evaluation and training, and retention and termination of their personnel, and that these entities are jointly "responsible for and allowed for the unchecked, illegal organizational authority . . . that enabled [the DOE Defendants] . . . to discriminate against plaintiff . . . ." Complaint at ¶¶11, 12. These conclusory allegations, without more, would be insufficient to state a claim against the DOE. *See Dwares*, 985 F.2d at 100.

The Complaint, however, includes facts from which a DOE custom or policy could be inferred. Plaintiff alleges that he was forced to "remain in limbo, in a 'Rubber Room' type setting" while awaiting resolution of the disciplinary proceedings (*id.* at ¶56). Even after the PCSS was signed, he was not "permitted to work in his licensed area or any other licensed area, by defendant DOE" (*id.* at ¶41), but was assigned to the Records Room, where he performed

24

work "involving the filing and retrieving of student records for the Review Team members and participants conducting reviews" (*id.* at 18(d)). In light of the fact that plaintiff was assigned to several different Districts and worked under several different supervisors after being removed from the classroom in 1998, these allegations, taken together, suggest that a DOE policy, custom or practice may underlie the individuals defendants' actions. Accordingly, the motion to dismiss the claims against the DOE on *Monell* grounds is denied.[5]

In contrast, the Complaint does not contain similar allegations regarding personnel employed by defendant City of New York. As the City Defendants correctly note in their Fourth Point, "[c]ourts in this circuit as well as the New York State courts have made clear that the City of New York and the DOE are separate legal entities." *Fierro v. City of New York*, 591 F. Supp. 2d 431, 446 (S.D.N.Y. 2008) (*rev'd in part on other grounds*, 341 Fed. App'x 696 (2d Cir. 2009)). Thus, "[i]n the absence of any allegations demonstrating participation by the City, the complaint fails to state a cause of action against it." *Falchenberg*, 375 F. Supp. 2d at 347. Plaintiff's §1983 claims against the City are, therefore, dismissed.

*Title VII*

The City Defendants' fourth argument under the Second Point and third argument under their First Point both raise issues relating to plaintiff's Title VII claim. Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII claims can only be brought against the plaintiff's employer. Even "individual defendants with supervisory control over a plaintiff may

---

[5]The DOE may move for summary judgment on *Monell* grounds, however, if discovery fails to produce evidence of a municipal policy, custom or practice.

not be held personally liable under Title VII." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d

Cir. 1995), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998);

*see also Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Wrighten v. Glowski*,

232 F.3d 119 (2d Cir. 2000) (*per curiam*).

   Before filing a Title VII claim, a plaintiff must first exhaust his or her administrative

remedies by timely filing of a charge of discrimination with the EEOC or an equivalent state or

city agency.  42 U.S.C. § 2000e-5(e); *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a

precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available

administrative remedies and file a timely complaint with the EEOC.") (citations omitted); *see*

*also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (*per*

*curiam*). This exhaustion requirement serves "to give the administrative agency the opportunity

to investigate, mediate, and take remedial action," and "enable[s] the EEOC to provide the

alleged wrongdoer with notice and to permit possible conciliation." *Fleming v. Verizon New*

*York. Inc.*, 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005) (citations omitted).  The time period for

filing the charge of discrimination varies, depending on whether the individual files his charge

directly with EEOC or with a state or local agency.  In New York, which has both state and local

fair employment agencies, an individual who initially files a grievance with the state or local

agency must file a charge with the EEOC within 300 days "after the alleged unlawful

employment practice occurred," or within 30 days after receiving notice that the state or local

agency has terminated the proceeding, whichever is earlier.  42 U.S.C. § 2000e-5(e)(1).  If a

charge is filed solely with the EEOC, it must be filed within 180 days after the alleged unlawful

employment practice occurred. *Id.*

Although exhaustion of administrative remedies is a waivable precondition to bringing a Title VII claim in federal court rather than a jurisdictional requirement, exhaustion remains an "essential element of Title VII's statutory scheme, . . . and one with which defendants are entitled to insist that plaintiffs comply." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (citation and internal quotation marks omitted). The purpose of the exhaustion requirement – namely, to encourage settlement of discrimination disputes through conciliation and voluntary compliance – would be defeated if a plaintiff could litigate a claim not previously presented to the EEOC. *See Miller v. Int'l Tel. & Tel.*, 755 F.2d 20, 26 (2d Cir. 1985). Accordingly, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dept. of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citing cases).

In the fourth argument under their Second Point, the City Defendants note that the Complaint does not allege "that plaintiff filed a discrimination charge with the EEOC . . . and received a right-to-sue letter prior to bringing the instant lawsuit." City Defendants' Memo at 11. Plaintiff's opposition papers not only fail to specifically controvert that argument, but confirm that plaintiff had not received a right-to-sue notice at the time he commenced this action. Plaintiff's Memo specifically states that "*[s]ince* the filing of the original Verified Complaint, and the first Amended Complaint, plaintiff has received permission from the [EEOC] . . . to file and serve a complaint pursuant to Title VII . . . ." Plaintiff's Memo at 2 (emphasis added). In addition, the right-to-sue notice attached to Plaintiff's Memo states that the EEOC did not investigate plaintiff's charge of discrimination because plaintiff was "already in court." Because plaintiff did not file a charge relating to the employment discrimination before commencing his

27

action, plaintiff's Title VII claims are dismissed for failure to exhaust administrative remedies. *See Francis*, 235 F.3d at 768.

In light of this holding, it is unnecessary to address the City Defendants' third argument under their First Point, relating to the statute of limitations for Title VII actions. In addition, this Court need not reach the question of whether plaintiff could establish a continuing violation.

### *Plaintiff's State Law Claims*

The New York State Human Rights Law, N.Y. Exec. Law §296 ("NYSHRL"), "contains no requirement of exhaustion of administrative remedies." *Butler v. New York Health & Racquet Club*, 768 F. Supp. 2d 516, 536 (S.D.N.Y. 2011) (quoting *Branker v. Pfizer, Inc.*, 981 F.Supp. 862, 865 (S.D.N.Y. 1997)). However, as the City Defendants note in their Fifth Point, section 3813 of New York's Education Law provides, in pertinent part, that:

> No action or special proceeding, for any cause whatever, . . . or claim against the district or any such school, or involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education, . . . or any officer of a school district, board of education, . . . or school . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

N.Y. Educ. Law §3813(1). "There is no question as to whether employment discrimination is included within the umbrella of § 3813." *Falchenberg v. New York City Dept. of Educ.*, 375 F. Supp. 2d 344, 350 (S.D.N.Y. 2005). Indeed, district courts in this Circuit have consistently held that the notice requirement of § 3813(1) applies to NYSHRL discrimination claims unless those claims seek to vindicate a public interest. *See, e.g., Marrero v. City of New*

*York*, No. 02 Civ. 6634 (DLC), 2004 WL 444548, at *3 (S.D.N.Y. Mar. 10, 2004) ("Failure to
file a notice of claim against a governmental subdivision for acts arising out of the state civil
rights laws is 'fatal' unless the plaintiff is vindicating a public interest."); *Kushner v. Valenti*, 285
F. Supp. 2d 314, 316 (E.D.N.Y. 2003) ("[T]he notice requirement of Education Law § 3813(1)
applies to Kushner's Executive Law § 296 discrimination claims as he does not seek to vindicate
a public interest.").

Plaintiff's Memo makes no effort to establish that plaintiff filed a notice of claim with the
DOE relating to any of the acts or omissions that are the subject of the Complaint. The
documents submitted by the plaintiff, however, include two such notices. The first, filed
sometime in 2004 and included among the exhibits submitted with the Complaint, alleges that
the DOE reassigned plaintiff to "a position that he did not agree to" on or about January 7, 2004.
*See* Complaint, Ex. B, p. 2. However, as noted at p. 9, *ante*, plaintiff has already sued on this
notice of claim in State court, where he was held not to have legal capacity to sue on the notice of
claim because he failed to disclose it in the course of bankruptcy proceedings he initiated in
September 2004. *See Gray*, 2008 WL 1050443, at *5.

The second notice of claim, which is attached to Plaintiff's Memo, relates solely to acts of
alleged retaliation which post-date the discrimination claims alleged in the Complaint.
Moreover, that notice of claim was not filed until June 2011 – almost one year after the
commencement of this action.

The Complaint in this case does not seek to vindicate a public interest, but seeks only a
money judgment for wrongdoing alleged to have affected plaintiff personally. Since plaintiff
lacks standing to sue under the notice of claim he filed in 2004 and has not filed another notice of
claim relating to any of the acts or omission that are the subject of the Complaint, plaintiff's

29

claims under the NYSHRL and state law breach of contract claims are dismissed. *See* N.Y. Educ. Law §3813(1).

### *Qualified Immunity*

Finally, in their Third Point, the City Defendants argue that the individually named defendants are entitled to qualified immunity. Government officers are entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Even where the law is "clearly established," officers are entitled to qualified immunity if it was "objectively reasonable" to believe that their actions were lawful at the time they acted. *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993). In either event, however, this defense generally "turns on facts not apparent from the face of [the] complaint." *Levine v. Lawrence*, No. 03 Civ. 1694, 2005 WL 1412143, at *10 (E.D.N.Y. June 15, 2005). Because this defense "necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss . . . .'" *Bernstein v. City of New York*, No. 06 Civ. 895 (RMB), 2007 WL 1573910, at *9 (S.D.N.Y. May 24, 2007) (quoting *Walker v. Mendoza*, No. 00 Civ. 93, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)).

In this case, the Corporation Counsel is arguing for qualified immunity while claiming, in the third argument under their Second Point, to be uncertain what claims plaintiff is raising against the individual City Defendants. Indeed, the City Defendants' Third Point does not discuss specific facts, but only states that "there is no basis for the individual City [D]efendants to believe that their acts violated any 'clearly established right' of the plaintiff." City Defendants' Memo at 13. This general allegation is insufficient to establish that any of the individual City Defendants are entitled to qualified immunity. Accordingly, the City Defendant's

30

qualified immunity argument is denied as premature. Nothing herein shall preclude the City

Defendants from seeking permission to renew this argument upon a motion for summary

judgment, provided the facts warrant such a request.

### *Defendant Hersh's Motion to Dismiss*

In his motion to dismiss, defendant Hersh principally seeks to dismiss the fourth cause of

action as time-barred. Although the Complaint does not characterize the fourth cause of action,

Hersh implies that it must be either a legal malpractice or §1983 claim. Hersh then argues that,

under either construction, the statute of limitations is three years and has long since expired.

The fourth cause of action alleges that, upon being notified by plaintiff that the DOE was

violating the terms of the PCSS, Hersh "had a greater duty than to simply tell plaintiff to file a

grievance" – namely, "a duty to intervene since he was one of the signers of the PCSS."

Complaint at ¶76. However, Hersh "failed to act or to do anything for the period between

August 2003 to the present." *Id.* Since Hersh's liability under the fourth cause of action is

predicated on this failure to perform his duties as a professional, this Court construes the fourth

cause of action as a claim for legal malpractice.

The statute of limitations for "an action to recover damages for malpractice, other than

medical, dental or podiatric malpractice" is three years, regardless of whether the underlying

theory is based in contract or tort. N.Y.C.P.L.R. §214(6). "The claim accrues when the

malpractice is committed." *MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*,

701 F. Supp. 2d 518, 524 (S.D.N.Y. 2010) (citing *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166

(2001)). "Accordingly, the three years begins to run 'when all the facts necessary to the cause of

action have occurred and an injured party can obtain relief in court.'" *Id.* at 525 (quoting

*Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 8 (2007).

In this case, the malpractice allegedly occurred on March 30, 2004, when Hersh wrote a letter informing plaintiff that he would not be representing him further and advising plaintiff to file a notice of claim in the event that the DOE failed to comply with the PCSS. Complaint, Ex. 7, pp. 1-2. However, plaintiff did not commence this action until July 1, 2010, more than six years after receiving Hersh's letter. Accordingly, the Complaint's fourth cause of action is time-barred.

As noted at pp. 20-21, *ante*, the Complaint does not identify the defendants against whom plaintiff seeks to advance a §1983 claim. However, to the extent the Complaint can be read as alleging a §1983 claim against Hersh, any §1983 claim arising from Hersh's actions in March 2004 would be barred by the three-year statute of limitations applicable to such claims. *See Okure*, 488 U.S. at 250-51. Moreover, the Complaint contains no allegations suggesting that Hersh is a state actor. To the contrary, Hersh's letterhead and motion papers both indicate that he is employed by the New York State United Teachers' Office of General Counsel as an Associate General Counsel. Since the facts alleged in the Complaint do not suggest any basis for bringing a §1983 claim against him, defendant Hersh is dismissed from this action.

### *Defendant Almeleh's Motion to Dismiss*

Like Hersh, defendant Almeleh seeks to dismiss the §1983 claim against her. As discussed at pp. 20-21, *ante*, this Court agrees with Almeleh's first argument: that the Complaint's allegations are insufficient to state a §1983 claim against her. This Court also agrees with Almeleh's second argument: that the facts alleged in the Complaint do not suggest a basis for a §1983 claim against Almeleh. The only allegation concerning Almeleh is that she

32

complained to Stacey Reeves, the Director/Supervisor of the Impartial Hearing Unit, opining that plaintiff was incompetent and requesting that he be barred from future hearings.  Complaint at ¶22.  Although DOE employees may have acted on that complaint by removing him from his position, there is nothing to suggest that Almeleh -- an Impartial Hearing Officer -- was involved in the decision not to afford plaintiff a hearing regarding his removal.  Since the facts alleged in the Complaint do not suggest any basis for bringing a §1983 claim against Almeleh, she is dismissed from this action.

### *Plaintiff's Motion to Amend*

In adjudicating plaintiff's motion to amend his Complaint, this Court is mindful that Rule 15(a) of the Federal Rules of Civil Procedure specifically provides that "leave shall be freely given when justice so requires."  District courts have discretion to deny leave "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive."  *Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002).  However, the Supreme Court has made clear that Rule 15(a)'s "mandate is to be heeded."  *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, there is nothing to suggest that plaintiff is engaging in dilatory or abusive tactics in seeking leave to amend.  Moreover, since this Court has already directed plaintiff to amend his §1983 claims, permitting plaintiff to further amend his pleading by adding Title VII retaliation claims against the DOE should not prove unduly prejudicial.  Accordingly, plaintiff's motion to amend the complaint is granted.

### *CONCLUSION*

For the reasons set forth above, the City of New York, Mayor Bloomberg, Joel Klein, Denise Hallett, Theresa Europe, Aderemi Bello, Edna Vega, Helene Crawford, Mary Padilla,

33

Myrterlena Rivera, Claude Hersh and Lynn Almeleh are dismissed from this action. In addition, plaintiff's Title VII employment discrimination claims and State claims for breach of contract and violation of the New York State Human Rights Law are dismissed in their entirety.

Plaintiff's motion to amend the Complaint is granted. Plaintiff shall file his amended complaint within thirty (30) days from the date of this Memorandum and Order. The amended complaint, which need not be verified, shall comply with this Court's directives concerning the §1983 claims, *see* p. 21, *ante*, and may incorporate the Title VII retaliation claim proposed in plaintiff's motion papers. However, the amended complaint shall not include the claims or defendants dismissed herein. If plaintiff fails to comply with this Order within the time allowed, this case may be dismissed without further notice to plaintiff.

**SO ORDERED.**

/ SANDRA L. TOWNES
United States District Judge

Dated: March  1 9 , 2012
Brooklyn, New York

34